**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALFREDO SALAZAR-GONZALEZ, AKA Alfredo Salazar-Gonzales, *Petitioner*, | No. 11-73600 |
| | Agency No. A094-965-975 |
| v. | |
| LORETTA E. LYNCH, Attorney General, *Respondent*. | OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted August 20, 2015[*]
San Francisco, California

Filed August 20, 2015

Before: Sidney R. Thomas, Chief Judge and M. Margaret
McKeown and William A. Fletcher, Circuit Judges.

Opinion by Judge McKeown

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

### Immigration

The panel granted Alfredo Salazar-Gonzalez's petition for review of the Board of Immigration Appeals' decision that he was not entitled to equitable tolling of his untimely motion to reopen on the basis of ineffective assistance of counsel.

The panel held that a lawyer's advice to an alien to forfeit his right of appeal to the BIA and leave the United States to apply for a visa for which he was statutorily ineligible was not a reasonable tactical decision. The panel held that the BIA abused its discretion by so characterizing counsel's "patently erroneous and legally dead wrong advice." Concluding that petitioner was entitled to equitable tolling because he demonstrated that his counsel performed deficiently and he was prejudiced, the panel remanded with instructions to grant reopening.

### COUNSEL

Carolyn Chapman, Law Office of Carolyn Chapman, San Diego, California, for Petitioner.

Stefanie A. Svoren-Jay, Trial Attorney, and John S. Hogan, Senior Litigation Counsel, Office of Immigration Litigation, Washington, D.C.; Stuart F. Delery, Acting Assistant

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Attorney General, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.

## OPINION

McKEOWN, Circuit Judge:

Sometimes, it is difficult to distinguish between a client's bad luck and a lawyer's bad advice. Risk is an inherent part of litigation, and lawyers must weigh countless probabilities when advising their clients on what claims to pursue, motions to file, and arguments to raise. This case, however, involves no dynamic assessment of risk: Salazar-Gonzalez's lawyer advised him to pursue a form of immigration relief that Salazar-Gonzalez was statutorily ineligible to receive. Steering a client into such a dead-end is not a "tactical decision[]," as the Board of Immigrations Appeals put it. It is ineffective assistance of counsel. Although we have observed that "[a] lawyer is often the only person who could thread the labyrinth" of the immigration laws, *Castro-O'Ryan v. I.N.S.*, 847 F.2d 1307, 1312 (9th Cir. 1988), that observation breaks down when the lawyer does not know the way. We grant the petition and remand with instructions to grant the motion to reopen.

## BACKGROUND

Alfredo Salazar-Gonzalez[1] is a native and citizen of Mexico. He came to the United States when he was two years old, and his wife and two children are all United States

---

[1] Various portions of the record refer to petitioner's last name as "Salazar," "Salazar-Gonzalez" and "Salazar-Gonzales."

citizens. His parents also reside in the United States as lawful permanent residents.

Salazar-Gonzalez was present in the United States illegally in 2008 when he was detained by immigration authorities. He was charged with removability and placed in removal proceedings. He retained attorney Jeff Griffiths of the Ganjoo Law Office to represent him.

Salazar-Gonzalez conceded removability and applied for cancellation of removal. In his application, he presented evidence of his employment history plus his considerable family and community ties in the United States. At the same time, Salazar-Gonzalez began pursuing an I-130 visa, which is a petition for an alien relative that was filed by his wife, a United States citizen. Griffiths expressed confidence Salazar-Gonzalez would obtain permission to live in the United States through this mechanism, representing in court filings that "[Salazar-Gonzalez] qualifies for consular processing" and that he "wishes to conclude his case as soon as possible and Counsel expects that his I-130 petition will be approved by 11/2009." When the Immigration Judge (IJ) denied his application for cancellation of removal, Salazar-Gonzalez followed Griffiths's advice: he did not pursue an appeal of the IJ's decision but instead accepted voluntary departure and returned promptly to Mexico to wait for his I-130 visa.

This was bad advice. After some delay, Salazar-Gonzalez received word that his visa application had been denied. In response to an email from Griffiths's law office, consular officials explained that Salazar-Gonzalez was statutorily ineligible to receive an I-130 visa, and that no waiver was available to him. Even more bad news awaited

him—Salazar-Gonzalez was informed that he would not be eligible to apply to reenter the United States for ten years.

Salazar-Gonzalez attempted to return nonetheless. (When he voluntarily departed after approximately thirty years in the United States, he left behind his wife, children, and other family members.) After reentering, he was again detained by immigration authorities in early 2011. Represented by new counsel, he filed a motion to reopen his prior removal proceedings on the grounds that he had received ineffective assistance of counsel. The IJ and the Board of Immigration Appeals (BIA) both denied the motion to reopen. Salazar-Gonzalez filed a timely petition for review in this court.

## ANALYSIS

This case hinges on the legal question of whether it is a reasonable tactical choice for a lawyer to advise an alien to forfeit his right of appeal to the BIA and leave the United States in order to apply for a visa for which he is statutorily ineligible. As the Supreme Court recently confirmed in *Mata v. Lynch*, 135 S. Ct. 2150, 2153–54 (2015), we have jurisdiction to review an untimely motion to reopen under 8 U.S.C. § 1252(a). We grant the petition because the BIA abused its discretion by characterizing a lawyer's patently erroneous and legally dead wrong advice as a reasonable "tactical decision[]." *See Toufighi v. Mukasey*, 538 F.3d 988, 992 (9th Cir. 2008) (stating that we review for abuse of discretion the BIA's denial of a motion to reopen).

Salazar-Gonzalez acknowledges that his motion to reopen removal proceedings was untimely, as the regulations provide that the motion must be filed within ninety days after a final administrative decision. 8 C.F.R. § 1003.2(c)(2). However,

this deadline is subject to equitable tolling. In *Singh v. Holder*, 658 F.3d 879 (9th Cir. 2011), we succinctly explained the requirements for equitable tolling due to ineffective assistance of counsel. The petitioner must demonstrate: "(a) that he was prevented from timely filing his motion due to prior counsel's ineffectiveness; (b) that he demonstrated due diligence in discovering counsel's fraud or error; and (c) that he complied with the procedural requirements of *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988)." *Id.* at 884.[2] Having met these procedural requirements, the alien must show that his "counsel's performance was deficient, and [that he] suffered prejudice" as a result. *Id.* at 885.

Here, the BIA held that Salazar-Gonzalez had "complied with the basic procedural requirements" necessary to obtain equitable tolling for his motion to reopen. It concluded, however, that he was not entitled to tolling because he "failed to establish that his prior attorney engaged in ineffective assistance." In the BIA's view, Griffiths's recommendation that Salazar-Gonzalez return to Mexico was a "tactical decision[]" that "do[es] not rise to the level of ineffective assistance of counsel." This reasoning was in error.

The crux of Salazar-Gonzalez's argument is that his lawyer's bad advice caused him to forfeit his right to appeal the IJ's denial of his application for cancellation of removal.

---

[2] Strict compliance with *Lozada* is not always necessary for equitable tolling. *See, e.g.*, *Lo v. Ashcroft*, 341 F.3d 934, 937 (9th Cir. 2003) ("[W]e have been flexible in applying the *Lozada* requirements."); *Castillo-Perez v. I.N.S.*, 212 F.3d 518, 526 (9th Cir. 2000) (granting petition despite petitioner's failure to comply with "formal requirements of *Matter of Lozada*").

The record amply supports this claim. In court filings, Griffiths expressed certainty that Salazar-Gonzalez would soon receive an I-130 visa. In fact, Griffiths was so confident that he moved to expedite the cancellation of removal hearing so Salazar-Gonzalez could return to Mexico to complete the I-130 application process.

Salazar-Gonzalez was not, however, eligible for such relief. The Immigration and National Act (INA) bars individuals who have been in the United States unlawfully for more than one year from obtaining an I-130 visa for a period of ten years. 8 U.S.C. § 1182(a)(9)(B)(i)(II) ("[An alien who] has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such alien's departure or removal from the United States, is inadmissible."). This prohibition is, however, subject to waiver by the Attorney General for the spouses and children of U.S. citizens or permanent residents. *Id.* § 1182(a)(9)(B)(v). Given that Salazar-Gonzalez's wife and children were U.S. citizens and his parents were lawful permanent residents, a waiver seemed potentially within his grasp.

What Griffiths apparently overlooked is that the very next subsection of the INA—28 U.S.C. § 1182(a)(9)(C)—imposes an additional bar to relief. That provision provides that an individual who spends more than one year unlawfully in the United States and then "enters or attempts to reenter the United States without being admitted" is inadmissible and not eligible for a waiver. *Id.* § 1182(a)(9)(C)(i). Herein lies the problem: after living in the United States illegally for over a decade, Salazar-Gonzalez returned to Mexico in 2003 for a funeral. His return to the United States later that year constituted entering the United States without being admitted

following a year of unlawful presence. As consular officials in Mexico determined, § 1182(a)(9)(C) thus prohibited granting him a waiver of inadmissibility.[3]

The right to effective assistance of counsel in immigration proceedings stems from the Fifth Amendment's guarantee of due process. *See Mohammed v. Gonzales*, 400 F.3d 785, 793 (9th Cir. 2005). As in a criminal case, a lawyer's performance in an immigration proceeding is not measured using "specific guidelines," *Wiggins v. Smith*, 539 U.S. 510, 521 (2003), but is instead a context-dependent inquiry into whether the attorney acted with "sufficient competence," *Mohammed*, 400 F.3d at 793. And just as a criminal defendant can establish prejudice without showing that a competent lawyer definitely would have earned an acquittal, *see Strickland v. Washington*, 466 U.S. 668, 694 (1984), an alien's burden is to demonstrate that his lawyer's errors "may have affected the outcome of the proceedings," *Mohammed*, 400 F.3d at 794 & n.11 (quoting *Iturbarria v. I.N.S.*, 321 F.3d 889, 900 (9th Cir. 2003)).

We have little difficulty concluding that Griffiths's advice constituted deficient performance. When Salazar-Gonzalez's request for cancellation of removal was denied, he had a chance to obtain relief through an appeal to the BIA. If he returned to Mexico, he was doomed to at least ten years of inadmissibility. "It is nigh impossible to imagine how a competent attorney would make a conscious decision to pursue a course leading to certain failure, when faced with several paths to success." *Singh*, 658 F.3d at 886. Griffiths's

---

[3] Before the BIA, the government argued that consular relief was "available" to Salazar-Gonzalez when he returned to Mexico. It has since retreated from that argument.

failure to grasp and advise his client on the futility of the I-130 course of action constituted ineffective assistance. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (advice based on "incorrect" understanding of the law is ineffective).

Salazar-Gonzalez was prejudiced by his counsel's deficient performance. When a lawyer's error results in an alien being denied his right to appeal altogether, we apply a "presumption of prejudice." *See Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000); *see also Dearinger v. Reno*, 232 F.3d 1042, 1045 (9th Cir. 2000) (applying presumption of prejudice because when "an alien is prevented from filing an appeal in an immigration proceeding due to counsel's error, the error deprives the alien of the appellate proceeding entirely"). The government presented no evidence that would rebut this presumption, and our review of the record demonstrates that Salazar-Gonzalez presented significant evidence in support of his cancellation of removal application. Thus he has demonstrated that the outcome of the proceedings may have been different had he not been the victim of ineffective counsel.

We are not persuaded by the government's additional arguments for denying the petition. To begin, the government notes that Griffiths did not "force[]" Salazar-Gonzalez "to accept voluntary departure." Government Brief at 23 (citing *Nehad v. Mukasey*, 535 F.3d 962 (9th Cir. 2008)). This is true but begs the question. It is beyond cavil that bad advice—not just outright extortion—can constitute ineffective assistance of counsel. The government's view is also naive—in an area of law that ranks just behind the

federal tax code in complexity,[4] it is hardly rational to think that someone with a high school education would have the wherewithal to know that he should ignore and override his lawyer's advice.

The government urges that Salazar-Gonzalez's filings contain "no evidence" of "what representations [Griffiths] did or did not make to him." Not so. Salazar-Gonzalez's motion to reopen contained a brief filed by Griffiths asserting that he "qualifies for consular processing" and that he "wishes to conclude his case as soon as possible and Counsel expects that his I-130 petition will be approved by 11/2009." The record also contains a complaint from Salazar-Gonzalez alleging that "[Griffiths] told me to waive my appeal rights and return to Mexico to wait for my visa." The BIA credited these statements as satisfying *Lozada* and they also reveal what Griffiths advised Salazar-Gonzalez to do.

Finally, the government asserts that there is no indication that Salazar-Gonzalez had agreed to represent him in an appeal to the BIA. That contention is both misleading and nonconsequential. The record shows that Griffiths's firm continued to represent Salazar-Gonzalez after the IJ rendered his decision; for example, attorneys from that office sent emails to consular officials on his behalf. In any event, the gravamen of Salazar-Gonzalez's claim is that he was duped into forgoing his appeal by Griffiths's bad advice about his eligibility for the I-130 visa. Whether Salazar-Gonzalez

---

[4] "With only a small degree of hyperbole, the immigration laws have been termed 'second only to the Internal Revenue Code in complexity.'" *Castro-O'Ryan*, 847 F.2d at 1312 (quoting E. Hull, *Without Justice for All* 107 (1985)).

intended to retain Griffiths or any other lawyer to conduct the appeal is of no import.

We recognize that there are situations where counsel's advice is legitimately a matter of judgment, tactics, or weighing probabilities. This situation is not of that ilk. To cause an alien to completely forfeit the right to appeal because of a totally mistaken view on the availability of other relief is an abdication of counsel's duty.

## CONCLUSION

The BIA concluded that Salazar-Gonzalez met all of the procedural requirements to establish entitlement to equitable tolling. We conclude he has met the substantive requirement of demonstrating that his counsel performed deficiently and that he suffered prejudice as a result. Salazar-Gonzalez is entitled to equitable tolling in the filing of his motion to reopen.

**Petition GRANTED and REMANDED.**